# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| FURIE OPERATING ALASKA, LLC, | |
| Plaintiff, | 3:12-CV-00158 JWS |
| vs. | ORDER AND OPINION |
| U.S. DEPARTMENT OF HOMELAND SECURITY; SECRETARY OF HOMELAND SECURITY JANET NAPOLITANO, in her official capacity; U.S. CUSTOMS AND BORDER PROTECTION; and ACTING COMMISSIONER DAVID V. AGUILAR, in his official capacity, | [Re: Motion at docket 41] |
| Defendants. | |

## I. MOTION PRESENTED

At docket 41, plaintiff Furie Operating Alaska, LLC ("plaintiff" or "Furie") requests that the court dismiss defendants' counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. It argues that it did not violate the Jones Act,[1] because its transportation of the Spartan 151 jack-up drilling rig ("Spartan

---

[1] 46 U.S.C. § 55102.

Rig") from the Gulf of Mexico to Cook Inlet, Alaska, was not subject to the Act. Defendant U.S. Department of Homeland Security ("DHS"), Secretary of Homeland Security Janet Napolitano, U.S. Customs and Border Protection ("CBP"), and CBP Acting Commissioner David Aguilar (collectively, the "Government" or "defendants") oppose at docket 54. Plaintiff's reply is at docket 60. Oral argument was heard on February 13, 2014.

## II. BACKGROUND

The challenged agency action at issue relates to Furie's 2011 transportation of the Spartan Rig from the Gulf of Mexico in Texas to Vancouver, British Columbia, using a foreign vessel and then from Vancouver to Cook Inlet, Alaska, using a U.S. vessel. CBP asserts that Furie's use of a foreign vessel to transport the Spartan Rig implicates the Jones Act, specifically 46 U.S.C. § 55102(b), which provides that no "merchandise" can be transported by water between points in the United States to which the coastwise laws apply, either directly or via a foreign port, unless the vessel transporting the merchandise is one that is built in, documented under the laws of, and owned by citizens of the United States. The penalty for violating this U.S.-vessel requirement is forfeiture of the merchandise transported or, alternatively, a sanction in an amount equal to the value of the merchandise or the actual cost of the transportation of the merchandise, whichever is greater.[2]

The U.S.-vessel requirement can be waived by the DHS Secretary, but only if the Secretary "considers it necessary in the interest of national defense . . . ."[3] Furie sought and received a waiver from then-Secretary Michael Chertoff in 2006 when Furie had planned to transport a different rig, the Tellus, to Alaska with the use of a foreign-owned vessel. Furie ended up unable to transport the Tellus in 2006 because of repairs and

---

[2] 46 U.S.C. § 55102(c).

[3] 46 U.S.C. § 501(b)(1).

legal disputes. In the meantime, the Tellus was sold to foreign interests, and Furie could no longer use it for its natural gas exploration in Alaska.

By 2010, Furie had made alternate plans, entering into a contract to use the Spartan Rig instead. It had also located a different vessel to transport the Spartan Rig to Alaska, but again it was a foreign-owned vessel. Furie requested that Secretary Napolitano reconfirm the Jones Act waiver that Secretary Chertoff had granted in 2006. When Furie did not get a response, it informed CBP of its intention to ship the Spartan Rig to Alaska with a foreign vessel based on the former waiver. CBP then informed Furie that the waiver was no longer valid and that it would need a new waiver or face penalties if it transported the Spartan Rig as planned.

Furie sought a new waiver from Secretary Napolitano but was denied in March of 2011. The denial was based on the fact that the Maritime Administration said a U.S.-owned vessel existed that could transport the Spartan Rig from Texas to Alaska. Furie believed that the Maritime Administration was incorrect and anticipated that the waiver would be granted given the corrected information, and thus in March of 2011 Furie had the Spartan Rig depart from Texas using a foreign-owned vessel for transportation. Indeed, on March 22, 2011, the Maritime Administration received new information and concluded that the qualified vessel could not transport the Spartan Rig to Alaska until October, outside Furie's requested time frame.

In May of 2011, Furie asked Secretary Napolitano for a reconsideration of her denial of the waiver. It asked the Secretary for an expedited decision because the Spartan Rig was in route to Alaska and scheduled to arrive at the end of May. On May 20, 2011, Secretary Napolitano denied the request, but indicated that DHS wanted to work with Furie to find an equitable way to allow transportation of the Spartan Rig to Cook Inlet. She indicated that CBP officials would be prepared to meet with Furie representatives to discuss possible mitigation of the Jones Act penalties that were likely to result if the Spartan Rig were offloaded in Alaska. Furie advocated for mitigated penalties, and the rig was diverted to Vancouver, Canada. After further negotiations

-3-

and communications regarding penalty mitigation, in July of 2011, CBP official Allen Gina indicated in an email that he would recommend that a mitigated penalty of $6.9 million be assessed against Furie.

On July 22, 2011, the Spartan Rig left Vancouver for Alaska, towed by a U.S. vessel. It arrived in Alaska a few weeks later. On October 13, 2011, CBP sent Furie a notice of violation based on the transport of the rig from Texas to Alaska via in part by a non-qualifying vessel. The notice assessed a penalty of $15 million, which it stated to be the full amount of the Spartan Rig's value. On December 12, 2011, Furie submitted a petition for mitigation, which CBP denied in January of 2012. In March of 2012, Furie submitted a supplemental petition for mitigation. CBP denied that request in May of 2012. On June 6, 2012, Furie informed CBP that it would file a request for reconsideration, but the next day CBP informed Furie that the regulations did not authorize a request for reconsideration and that if Furie did not pay the full $15 million by the next day, it would forward the matter for a collection action.

CBP sent a bill for $15 million to Furie on June 16, 2012. The bill indicated that payment was due within ten days. CBP sent another $15 million bill to Furie on June 30, 2012, which again noted that payment was due within ten days. On July 9, 2012, Furie submitted a request for reconsideration to CBP, but the next day CBP sent a letter to Furie stating that it would not consider the request to reconsider its decision. Furie asked that its request for reconsideration be forwarded to the Acting Commissioner of the CBP for his personal review, but that request was also denied. Furie received a third bill for the $15 million penalty on July 19, 2012. It did not pay the bill and filed this lawsuit. Defendants filed a counterclaim at docket 38, requesting that the court enforce the penalty against Furie.

Furie argues that the penalty should not be enforced and that Defendants' counterclaim should be dismissed because the transport of the Spartan Rig from the Gulf of Mexico to the Cook Inlet was not a violation of the Jones Act. Furie argues that the Spartan Rig "was not merchandise whose coastwise movement would be governed

by the Jones Act, but instead was a vessel whose movement was governed by the Coastwise Towing Statute, 46 U.S.C. § 55111."[4] The Government argues that the Spartan Rig is considered merchandise within the meaning of the Jones Act, and its movement was governed by the Jones Act and not the Coastwise Towing Statute, because it was hauled on another vessel instead of being towed in the water by another vessel.

### III. STANDARD OF REVIEW

**A. Motion to Dismiss**

Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims. In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[5] To be assumed true, the allegations, "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."[6] Dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[7] "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."[8]

To avoid dismissal, a plaintiff must plead facts sufficient to "'state a claim to relief that is plausible on its face.'"[9] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[4] Doc. 60 at p. 2.

[5] *Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

[6] *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

[7] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[8] *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

defendant is liable for the misconduct alleged."[10] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[11] "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[12] "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[13]

**B. Agency Deference**

At issue in this motion is the CBP's interpretation of the Jones Act and the Towing Statute. To determine whether an agency's interpretation of a statute warrants deference, the court first determines whether the statute is unambiguous as to the question at issue.[14] If it is unambiguous, then the court must give effect to Congress's intent, regardless of what the agency determined.[15] If, on the other hand, the statute is ambiguous, the court must decide how much weight to give the agency's interpretation.[16] An agency's interpretation of a statute can be accorded a high level of deference, *Chevron*[17] deference, if "Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation

---

[10]*Id.*

[11]*Id.* (citing *Twombly*, 550 U.S. at 556).

[12]*Id.* (quoting *Twombly*, 550 U.S. at 557).

[13]*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *see also Starr v. Baca*, 652 F.3d at 1216.

[14]*McMaster v. United States*, 731 F.3d 881, 889 (9th Cir. 2013).

[15]*Id.*

[16]*Id.*

[17]*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

claiming deference was promulgated in the exercise of that authority."[18] If the agency's interpretation carries the force of law, the court applies *Chevron* deference, allowing that interpretation to stand as long as it is based on a permissible construction.[19] If it does not carry the force of law—for example, that is if the interpretation is set forth in an opinion letter or guideline—it is not entitled to such deference.[20] However, that interpretation "may still warrant respect proportional to its power to persuade."[21] Under this *Skidmore*[22] deference, the court determines what weight to give the agency's interpretation based on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and [any other] factors which give it power to persuade."[23] An agency's decision to impose a civil penalty will not be overturned "unless it is either 'unwarranted in law or unjustified in fact.'"[24]

## IV. COASTWISE LAWS

CBP imposed a fine on Furie pursuant to the Jones Act. The Jones Act is part of the "coastwise laws," which are a collection of statutes that govern trade and navigation in U.S. coastal waters and require that trade between U.S. ports be conducted by U.S.-built and U.S.-owned vessels. The purpose of the coastwise laws is to "protect the

---

[18] *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001).

[19] *McMaster*, 731 F.3d at 889.

[20] *Christensen v. Harris Cnty.*, 529 U.S. 576 (2000) (noting that interpretations set forth in informal rulings such as opinion letters, agency manuals, and enforcement guidelines, as opposed to interpretations formed after formal adjudication or notice-and-comment rule-making, do not have the force of law and thus are not entitled to *Chevron* deference.)

[21] *McMaster*, 731 F.3d at 892 (internal quotations omitted).

[22] *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

[23] *Id.* at 140.

[24] *Balice v. U.S. Dep't of Agric.*, 203 F.3d 684, 689 (9th Cir. 2000) (quoting *Bosma v. U.S. Dep't of Agric.*, 754 F.2d 804, 810 (9th Cir. 1984)).

American shipping industry already engaged in the coastwise trade, to provide work for American shipyards, and to improve and enhance the American Merchant Marine."[25]

The coastwise laws have been codified in Chapter 551 of Title 46 of the United States Code. The various statutes comprising the coastwise laws address a range of subjects related to shipping, such as transportation of passengers, transportation of merchandise, transportation of hazardous waste, towing of vessels, and dredging activities.

> The three primary coastwise statutes are the Nicholson Act, [46 U.S.C. § 55114], which requires fish to be brought ashore in American [vessels]; the Transportation of Passengers in Foreign Vessels Act, [46 U.S.C. § 55103], which requires passengers sailing between United States ports to be carried in American [vessels]; and the Jones Act, [46 U.S.C. § 55102], which requires merchandise carried between United States ports to be shipped in American [vessels].[26]

Another statute included in the coastwise laws, and at issue in the motion presented here, is the coastwise towing statute, 46 U.S.C. § 55111 ("Towing Statute"), which requires that any towing of a vessel between United States ports and harbors be done by a documented American towing vessel.

While the coastwise statutes are similar in that they require vessels to be U.S.-owned and documented under United States law, the types of penalties imposed by the statutes vary. A violation of the Jones Act can result in forfeiture of the merchandise transported, a penalty "equal to the value of the merchandise (as determined by the Secretary of Homeland Security) or the actual cost of the transportation, whichever is greater . . . ."[27] A violation of the Passengers Act can result in a penalty of $300 per passenger transported and landed.[28] A violation of the Towing Statute can result in a

---

[25]*Marine Carriers Corp. v. Fowler*, 429 F.2d 702, 708 (2d Cir. 1970).

[26]Debra C. Buchanan, *United States Coastwise Laws in the Pacific*, 31 J. Mar. L. & Com. 119, 119 n.1 (2000).

[27]46 U.S.C. § 55102(c).

[28]46 U.S.C. § 55103(b).

$1,100 penalty, plus an additional penalty of $60 per ton based on the tonnage of the towed vessel.[29]

**V. DISCUSSION**

**A. Merchandise**

As noted above, the Jones Act regulates the transportation of merchandise between coastwise points. Furie argues that the Jones Act should not apply to its transportation of the Spartan Rig because the rig is not "merchandise." The term "merchandise" is not defined in the Jones Act. CBP has construed the term broadly to include all goods.[30] Indeed, the Act itself, while not defining merchandise, suggests that it is a broad term by specifically noting that government-owned goods and valueless materials are encompassed within the definition.[31] Historically, CBP has turned to the definition of "merchandise" contained in the Tariff Act to supplement its interpretation of the Jones Act.[32] Under the Tariff Act, "merchandise" is broadly defined as "goods, wares, and chattels of every description."[33] While very broad, the definition is typically restricted to "merchandise in a commercial sense," distinct from "personal effects," "baggage," or "articles of personal adornment."[34] Thus, when jack-up rigs like the Spartan Rig or any other vessel are carried aboard another vessel between coastwise points, CBP considers, and has historically considered, those vessels to be

---

[29] 46 U.S.C. § 55111(c).

[30] *See, e.g.*, 14 Cust. B. & Dec. 1044, 1980 WL 113089 (May 30, 1980); CBP Ruling HQ H026282 (May 13, 2008) (included in record at doc. 43-7).

[31] 46 U.S.C. § 55102(a).

[32] *See, e.g.*, 14 Cust. B. & Dec. 1044, 1980 WL 113089 (May 30, 1980); CBP Ruling HQ H026282 (May 13, 2008) (included in record at doc. 43-7).

[33] 19 U.S.C. § 1401(c).

[34] *United States v. Mattio*, 17 F.2d 879, 880 (9th Cir. 1927).

-9-

merchandise, because in such situations they do not retain their vessel function and are being transported in a commercial sense.[35]

Furie argues that CBP's interpretation of the term "merchandise" is contrary to law, or at least unsound, and thus should not be accorded any level of deference. It points out that the Tariff Act separately defines the term "vessel" to include "every description of water craft or other contrivance used, or capable of being used, as a means of transportation in water."[36] Furie argues that the Spartan Rig is clearly a vessel at all times, even when not in the water. CBP does not dispute that a jack-up rig is a vessel, but asserts that when it is carried aboard another vessel, for purposes of the Jones Act, it is also merchandise.[37] Furie argues that if CBP is consistent in its application of the Tariff Act to form its definition of merchandise, a vessel cannot be both merchandise and a vessel. It argues that because merchandise is treated differently than vessels for duty purposes, it is only rationale to conclude that Congress meant to exclude vessels from merchandise in the Jones Act as well.

The court finds such argument unavailing. CBP's use of the Tariff Act to inform its interpretation of the term "merchandise" under the Jones Act does not require CBP to exclude vessels from that Act. As noted by the Government, the fact that the Tariff Act contains different definitions for the terms "vessel" and "merchandise" does not

---

[35] *See* CBP Ruling HQ 115049 (May 30, 2000) (included in the record at doc. 43-13) (noting that the agency "has long-held that a vessel carried aboard another vessel is merchandise"); 19 Cust. B. & Dec. 508, 1984 WL 192062 (Nov. 21, 1984) ("A vessel transported on another vessel is merchandise for purposes of [the Jones Act]."); 14 Cust. B. & Dec. 876, 1979 WL 36275 (Aug. 29, 1979) ("The determination that an object is a vessel within the meaning of [the Tariff Act] or for the purposes of [the Towing Statute], does not prevent it from being considered merchandise within the meaning of [the Jones Act]."); *see also* CBP Ruling HQ H112875 (Nov. 22, 2010) (included in record at doc. 43-2) (noting that jack-up rigs that are carried on top of other vessels no longer transport themselves but are fully transported by another vessel and thus function as cargo).

[36] 19 U.S.C. § 1401(a).

[37] *See* CBP Ruling HQ H112875 (Nov. 22, 2010)(included in the record at doc. 43-2); CBP Ruling HQ 110808 (Aug. 29, 1990) (included in the record at doc. 43-11) .

-10-

mean that the Spartan Rig cannot also constitute merchandise in certain circumstances. If a vessel arrives transporting cargo or persons—that is, if it is being used as an instrumentality of commerce—it is just a vessel, subject to certain reporting requirements. If that same vessel is imported into the United States as a commodity, it can be subject to duties.[38] Thus, the fact that the term "vessel" is defined separately in the Tariff Act does not mean that CBP's interpretation of merchandise under the Jones Act to include vessels in certain circumstances is contrary to Congress's intent or otherwise invalid.

Furie also argues that case law interpreting the definition of merchandise under the Tariff Act demonstrates that CBP's broad definition of merchandise is not sound. Furie asserts that under the case law, to be considered merchandise the cargo must be in the stream of commerce—that is, something intended for sale rather than something already in the hands of an owner. The cases Furie cites cannot be read so broadly. Both *Imperial Packaging Corp. v. United States*[39] and *Poland Brothers, Inc. v. United States*[40] dealt with the proper duty rate that should be applied to imported garment bags. In order to properly classify those garment bags for customs purposes, the courts had to determine whether the materials to be carried inside those bags could be considered merchandise. The courts in those cases relied on the discussion of merchandise set forth in *United States v. Mattio*, which indicated that merchandise should be considered goods in a commercial sense and should not include baggage or

---

[38] *See United States v. Seagull Marine*, 627 F.2d 1083 (C.C.P.A. 1980) (stating that while rubber rafts meant the broad definition of "vessel" under the Tariff Act, they were nonetheless subject to a duty because they were being imported as an article of commerce); Harmonized Tariff Schedule of the United States, Chapter 89 (identifying the rates applicable to different types of merchandise, including "vessels").

[39] 535 F.Supp. 688 (Ct. Int'l Trade 1981)

[40] 64 Cust. Ct. 248, C.D. 3986 (April 2,1970)

personal effects.[41] The court in *Imperial Packaging* concluded that because the garment bags would be carrying clothes bought by a customer to take home, those clothes were more closely aligned to the purchaser's personal effects and not merchandise. The court in Poland Brothers concluded that the plaintiff failed to rebut the presumption that the garment bags were household items rather than containers for merchandise. The cases did not hold that merchandise can only include goods that are being sold or held for distribution. At most, they stand for the fact that merchandise cannot include personal items. The Spartan Rig is not simply a personal effect, even though it is not being bought or sold or transported for distribution, and CBP's classification of such a rig as merchandise is not clearly contrary to the Tariff Act.

CBP has long held in its informal opinions that merchandise under the Jones Act includes vessels when carried on another vessel, and it has been consistent in this position.[42] Moreover, in one formal opinion, issued after a notice and comment period, CBP rejected a petitioner's argument that the Jones Act should not apply when dual-mode transportation is used to transport a vessel between coastwise points.[43] That is to say, with a ruling that has the force of law, CBP concluded that the Jones Act applies when a vessel is carried on another vessel only during a portion of its transit. In so ruling, CBP necessarily had to reject the petitioner's argument that a vessel does not constitute merchandise for purposes of the coastwise laws. Furie argues that this ruling

---

[41] 17 F.2d at 880.

[42] *See* CBP Ruling HQ 115049 (May 30, 2000) (included in the record at doc. 43-13) (noting that the agency "has long-held that a vessel carried aboard another vessel is merchandise"); 19 Cust. B. & Dec. 508, 1984 WL 192062 (Nov. 21, 1984) ("A vessel transported on another vessel is merchandise for purposes of [the Jones Act]."); 14 Cust. B. & Dec. 876, 1979 WL 36275 (Aug. 29, 1979) ("The determination that an object is a vessel within the meaning of [the Tariff Act] or for the purposes of [the Towing Statute], does not prevent it from being considered merchandise within the meaning of [the Jones Act]."); *see also* CBP Ruling HQ H112875 (Nov. 22, 2010) (included in record at doc. 43-2) (noting that jack-up rigs that are carried on top of other vessels no longer transport themselves but are fully transported by another vessel and thus function as cargo).

[43] Interpretation of Coastwise Laws, 54 Fed. Reg. 3438 (Jan. 24, 1989).

is not entitled to deference because it does not adequately explain why a vessel not being bought or sold or held for distribution should be considered merchandise under the coastwise laws. However, CBP's interpretation is at least permissible as explained above, and thus, pursuant to *Chevron,* the court defers to CBP's interpretation of merchandise. Even if *Chevron* deference is not warranted, the court concludes that CBP's interpretation of merchandise should be accorded deference based on *Skidmore* given that it has been consistently applied and the reasoning behind it is sound. Therefore, a vessel can constitute merchandise under the Jones Act, and the court cannot dismiss the Government's counterclaim based solely on the argument that CBP has improperly broadened the term "merchandise" under the Act.[44]

**B. The Towing Statute**

Furie also argues that the Jones Act should not apply to its transportation of the Spartan Rig when considered in light of the Towing Statute. Furie notes that the coastwise laws govern the transportation of various items between U.S. ports: the Jones Act governs transportation of merchandise, and the Passenger Act governs the transportation of passengers. It argues that the Towing Statute, likewise, governs all transportation of vessels and that as long as the vessel is being transported as part of its normal maritime activities, and not as a commodity for sale, Congress intended the Towing Statute to apply. The Government disagrees, arguing that the Towing Statute does not apply any time a vessel is transported, but rather, it is limited to actual "towing" situations where the vessel being moved remains in the water.

---

[44]Indeed, in its reply brief, Furie retreats from its argument that the term "merchandise" can only include items that are actually being bought or sold or held for distribution. Instead, it stresses that its argument is not just that the Spartan Rig does not fall within the definition of merchandise; rather, its argument is that the Towing Statute governs the Spartan Rig's transportation given the fact that the rig is a vessel and was not being moved as part of a sale, along with the fact that it was being transported to function as a vessel upon arrival in the Cook Inlet. Its arguments regarding the interaction between the Jones Act and the Towing Statute are addressed in the next section.

-13-

The court concludes that the Towing Statute is ambiguous—it is not clear that Congress intended the Towing Statute to apply any time a vessel is transported as part of its regular maritime activities. Unlike the Jones Act, which specifically applies to the "transportation of merchandise," or the Passenger Statute, which specifically applies to the "transport [of] passengers," the Towing Statute does not explicitly apply to all modes of vessel transportation. Rather it states as follows:

> (a) In general.--Except when towing a vessel in distress, a vessel may not do any part of any towing described in subsection (b) unless the towing vessel--
>     (1) is wholly owned by citizens of the United States for purposes of engaging in the coastwise trade; and
>     (2) has been issued a certificate of documentation with a coastwise endorsement under chapter 121 of this title or is exempt from documentation but would otherwise be eligible for such a certificate and endorsement.
>
> (b) Applicable towing.--Subsection (a) applies to the towing of--
>     (1) a vessel between ports or places in the United States to which the coastwise laws apply, either directly or via a foreign port or place;
>     (2) a vessel from point to point within the harbors of ports or places to which the coastwise laws apply; or
>     (3) a vessel transporting valueless material or dredged material, regardless of whether it has commercial value, from a point in the United States or on the high seas within the exclusive economic zone, to another point in the United States or on the high seas within the exclusive economic zone.[45]

It is only concerned with acts of "towing." The terms "towing" or "towing vessel" are not defined in the statute. The parties disagree on what the terms encompass.

The Government argues that the term "towing" should be applied in a limited manner so that towing only occurs when the towed vessel remains at least partially in the water during its movement. Indeed, the traditional definition of towing is limited; it means "to pull with a rope" or "drag."[46] However, new technologies have broadened the range of movements considered to be towing in the shipping industry; the range of movements includes both wet-towing and dry-towing. In the shipping context, "wet-

---

[45] 46 U.S.C. § 55111.

[46] Doc. 43-17.

-14-

towing" includes all movements of a vessel when that vessel is partially submerged in water, including not only the pulling of another vessel but also the pushing of another vessel or a vessel being hauled along side another vessel.[47] "Dry towing" on the other hand is when a vessel moves another vessel on a barge or a submersible heavy-lift barge.[48] Submersible heavy-lift barges were first developed around the 1970s. These barges are submerged to a sufficient depth for the cargo to be floated over its deck and then the deck of the barge rises, lifting the cargo out of the water.[49] Furie argues that the term "towing" in the Towing Statute should include all vessel transport when the purpose of the transport is to "facilitate the towed vessel's normal maritime operations."[50] In other words, Furie believes the Towing Statute should encompass not just wet-towing, as CBP interprets it, but also dry-towing.

Given the ambiguity in the Towing Statute, which does not define the term "towing," and the multiple meanings the term could encompass, the court must consider whether CBP's application of the Jones Act instead of the Towing Statute to dry-towing situations is entitled to deference. While there is no formal regulation addressing the interplay between the two statutes, there is a formal regulation specifying when the Jones Act will be applied. That regulation, 19 C.F.R. § 4.80b, states that the "coastwise transportation of merchandise takes place . . . when merchandise laden at a [coastwise point] is unladen at another coastwise point."[51] The focus is on whether the merchandise is loaded on and unloaded off a vessel at a coastwise point. If it is, then it has been transported within the meaning of the Jones Act. As discussed above, CBP does not limit merchandise to items being bought or sold or those being moved for

---

[47]Doc. 43-18.

[48]Doc. 43-19; Doc. 55-23.

[49]*Id.*

[50]Doc. 42 at p. 23.

[51]19 C.F.R. § 4.80b(a).

-15-

distribution purposes. Instead, it considers anything with a commercial purpose to qualify as merchandise. Under § 4.80b then, whether the Jones Act applies depends on whether that merchandise is loaded or unloaded at coastwise points. Section 4.80b is not contrary to the Jones Act and is entitled to deference.[52]

With § 4.80b in mind, CBP's distinction between when the Jones Act applies and when the Towing Act applies is rational and persuasive. CBP does not see the distinguishing factor to be whether the cargo is another vessel or not. Indeed, the Towing Statute does not require that such a distinction be made because it does not explicitly apply to all types of vessel transportation. Rather, the distinguishing factor between the Jones Act and the Towing Statue is whether or not the vessel is laden and unladen. When a vessel is towed in the traditional sense, no loading and unloading of the vessel occurs. In such a situation, the towed vessel retains its vessel function by being in the water, and it only needs to be attached and detached to the towing vessel. When a vessel is dry towed, however, it actually gets loaded on and unloaded from another vessel like any other merchandise, and the Jones Act applies under the regulation.

CBP has consistently applied this distinction. It has long concluded in its informal rulings that if a vessel is towed under the traditional definition of towing—that is, if it is pulled or pushed or hauled by another vessel while still in the water—the Towing Statute applies, but if a vessel is carried aboard another vessel and laden and unladen at coastwise points, it will be covered by the Jones Act.[53] Also, CBP's interpretation of the Towing Statue and the Jones Act does not make the Towing

---

[52]*See Int'l Raw Materials, Ltd. v. Baker*, Civ. A. No. 87-2005, 1988 WL 51946, at *4 (E.D. Pa. May 23, 1988) (holding the regulation to be within CBP's authority to promulgate and noting that Congress had amended the Act three times without rescinding the regulation, thus giving it the inference of approval).

[53]*See, e.g.,* 19 Cust. B. & Dec. 508, 1984 WL 192062 (Nov. 21, 1984); 14 Cust. B. & Dec. 876, 1979 WL 36275 (Aug. 29, 1979).

Statute superfluous. Not every violation of the Towing Statute would result in a violation of the Jones Act.

Moreover, CBP's limited view of towing is in line with Congress's definition of "towing vessel" in Subtitle II of Title 46, which sets forth various regulations for vessels and seamen. In that subtitle, a "towing vessel" is defined as a "commercial vessel engaged in or intending to engage in the service of pulling, pushing, or hauling along side, or any combination of pulling, pushing, or hauling along side."[54] Furie argues that the definition in Subtitle II is irrelevant here because it only applies to that specific subtitle and not to the coastwise laws, which are located in Subtitle V of Title 46. However, the Towing Statute actually references Subtitle II; it requires that the towing vessel comply with the documentation requirements of Chapter 121 of Title 46, which is located in Subtitle II.[55] Thus, given that the Towing Statute requires that a "towing vessel" comply with the endorsement requirements in Subtitle II and given that in Subtitle II Congress specifically limited a "towing vessel" to a vessel which engages in wet-towing, the court concludes that the definition is not irrelevant and at least lends strong support to CBP's interpretation.

Given CBP's rationale behind its application of the Jones Act instead of the Towing Statute when a vessel is transported via dry-towing methods, its consistency in applying the Jones Act in such situations, and the support provided by the definition of "towing vessel" in Subtitle II, the court concludes that CBP's understanding and application of the Jones Act and the Towing Statute is sufficiently persuasive to be upheld.

---

[54] 46 U.S.C. § 2101(40).

[55] 46 U.S.C. § 55111(a)(2) (the towing vessel must be "issued a certificate of documentation with a coastwise endorsement under chapter 121 of this title").

-17-

## VI. CONCLUSION

Based on the preceding discussion, Furie's motion to dismiss at docket 41 is **DENIED**.

DATED this 27th day of March 2014.

/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE