# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| FURIE OPERATING ALASKA, LLC,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; SECRETARY OF HOMELAND SECURITY JEH JOHNSON, in his official capacity; U.S. CUSTOMS AND BORDER PROTECTION; and ACTING COMMISSIONER GILL KERLIKOWSKE,<br>in his official capacity,<br><br>　　　　Defendants. | 3:12-CV-00158 JWS<br><br>ORDER AND OPINION<br><br>[Re: Motion at docket 116] |

## I. MOTION PRESENTED

At docket 116, Defendants U.S. Department of Homeland Security ("DHS"), Secretary of Homeland Security Jeh Johnson, U.S. Customs and Border Protection ("CBP"), and CBP Commissioner Gil Kerlikowske (collectively, the "Government" or "Defendants") filed a motion to dismiss Counts II, III, and IV of the complaint pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The motion challenges the reviewability of Furie's Administrative Procedure Act ("APA")[1] claims. Plaintiff Furie Operating Alaska, LLC ("Plaintiff" or "Furie") filed its response at

---

[1] 5 U.S.C. § 701 *et seq.*

docket 118. Defendants reply at docket 113. Oral argument was not requested and would not assist the court.

## II. BACKGROUND

The challenged agency actions at issue relate to Furie's 2011 transportation of the Spartan Rig from the Gulf of Mexico in Texas to Vancouver, British Columbia, using a foreign vessel and then from Vancouver to Cook Inlet, Alaska, using a U.S. vessel. Furie's use of a foreign vessel to transport the Spartan Rig implicates the Jones Act, specifically 46 U.S.C. § 55102(b), which provides that no "merchandise" can be transported by water between points in the United States to which the coastwise laws apply, either directly or via a foreign port, unless the vessel transporting the merchandise is one that is built in, documented under the laws of, and owned by citizens of the United States. The penalty for violating this U.S.-vessel requirement is forfeiture of the merchandise transported or, alternatively, a sanction in an amount equal to the value of the merchandise or the actual cost of the transportation of the merchandise, whichever is greater.[2]

The U.S.-vessel requirement can be waived by the Secretary of DHS ("Secretary"), but only if there is no qualified vessel from the United States available for the transport and if the Secretary "considers it necessary in the interest of national defense . . . ."[3] Furie sought and received a waiver from then-Secretary Michael Chertoff in 2006 when Furie had planned to transport a different rig, the Tellus, to Alaska with the use of a foreign vessel. Furie was unable to transport the Tellus in 2006 because of repairs and legal disputes. In the meantime, the Tellus was sold to foreign interests, and Furie could no longer use it for its natural gas exploration in Alaska.

---

[2] 46 U.S.C. § 55102(c).

[3] 46 U.S.C. § 501(b)(1).

By 2010, Furie had made alternate plans, entering into a contract to use the Spartan Rig instead. It had also located a different vessel to transport the Spartan Rig to Alaska, but again it was a foreign vessel. Furie requested that then-Secretary Janet Napolitano reconfirm the Jones Act waiver that Secretary Chertoff had granted in 2006. When Furie did not get a response, it informed CBP of its intention to ship the Spartan Rig to Alaska with a foreign vessel based on the former waiver. CBP informed Furie that the waiver was no longer valid and that it would need a new waiver or face penalties if it transported the Spartan Rig as planned.

Furie sought a new waiver from Secretary Napolitano but was denied in March of 2011. The denial was based on the Maritime Administration's conclusion that there was a U.S. vessel capable of transporting the Spartan Rig from Texas to Alaska. Furie believed that the Maritime Administration was incorrect and anticipated that a waiver would be granted given the corrected information, and thus, in March of 2011, Furie had the Spartan Rig depart from Texas using a foreign vessel for transportation without a waiver. Indeed, on March 22, 2011, the Maritime Administration received new information and concluded that the qualified U.S. vessel could not transport the Spartan Rig to Alaska until October, outside Furie's requested time frame.

In May of 2011, Furie asked Secretary Napolitano to reconsider her denial on an expedited basis because the Spartan Rig was already on its way to Alaska and scheduled to arrive at the end of May. On May 20, 2011, Secretary Napolitano denied the request because a waiver was not in the interest of national defense, as neither the Department of Defense nor the Department of Energy supported it. Her denial indicated, however, that DHS wanted to work with Furie to find an equitable way to allow transportation of the Spartan Rig to the Cook Inlet. She indicated that CBP officials would be prepared to meet with Furie representatives to discuss possible mitigation of the penalties that would result if the Spartan Rig were offloaded in Alaska. Furie advocated for mitigated penalties, and the rig was diverted to Vancouver, Canada. After further negotiations and communications regarding penalty mitigation, in

July of 2011, CBP official Allen Gina indicated in an email that he would recommend a mitigated penalty of $6.9 million.

On July 22, 2011, the Spartan Rig left Vancouver for Alaska, towed by a U.S. vessel. It arrived in Alaska a few weeks later. On October 13, 2011, CBP sent Furie a notice of violation based on the transport of the rig from Texas to Alaska via in part by a non-qualifying vessel. The notice assessed a penalty of $15 million, which it stated to be the full value of the Spartan Rig. On December 12, 2011, Furie submitted a petition for mitigation, which CBP denied in January of 2012. In March of 2012, Furie submitted a supplemental petition for mitigation. CBP denied that request in May of 2012. On June 6, 2012, Furie informed CBP that it would file a request for reconsideration, but the next day CBP informed Furie that the regulations did not authorize a request for reconsideration. Furie did not pay the penalty and instead filed this lawsuit. Defendants filed a counterclaim at docket 38, requesting that the court enforce the penalty against Furie.

Furie's complaint has three remaining APA claims: (1) Count II alleges that the Secretary failed to exercise independent judgment when she denied Furie's waiver request, which it alleges was arbitrary, capricious, and an abuse of discretion, (2) Count III alleges that the Secretary's refusal to grant a waiver when her predecessor had previously done so on the same set of facts was an unexplained action which was arbitrary, capricious, and an abuse of discretion; and (3) Count IV alleges that Defendants' assessment of an unmitigated penalty was arbitrary and capricious in light of the Secretary's promise to come up with an equitable way to allow transportation and CBP's acknowledgment of mitigating factors.[4] Defendants argue that the court lacks jurisdiction over Counts II through IV of Furie's complaint because the Secretary's

---

[4]Furie also has two remaining constitutional claims: (1) the $15 million penalty was unlawful and unenforceable because it constituted an excessive fine under the Eighth Amendment; and (2) the $15 million penalty was unlawful and unenforceable because Defendants violated Furie's due process rights. These claims are not the subject of Defendants' motion to dismiss.

-4-

decision to deny Furie a waiver of the Jones Act under 46 U.S.C. § 501(b) and CBP's decision to not mitigate the resulting penalty are unreviewable under the APA.

### III.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction.  In order to survive a defendant's motion to dismiss, the plaintiff has the burden of proving jurisdiction.[5]  Where the defendant brings a facial attack on the subject matter of the district court, the court assumes the factual allegations in the plaintiff's complaint are true and draws all reasonable inferences in the plaintiff's favor.[6]  The court does not, however, accept the truth of legal conclusions cast in the form of factual allegations.

Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims.  To avoid dismissal, a plaintiff must plead facts sufficient to "'state a claim to relief that is plausible on its face.'"[7]  That is, "[f]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[8]  To be assumed true, the allegations "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."[9]  Dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable

---

[5]*Tosco v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2000).

[6]*Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

[7]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[8]*Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

[9]*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

legal theory."[10]  "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."[11]

### III. DISCUSSION

**A.     Counts II and III**

Count II alleges that in denying Furie's request for a waiver under 46 U.S.C. § 501(b), the Secretary failed to exercise her independent judgment as to whether a waiver was in the interest of national defense and instead allowed the Department of Defense and the Department of Energy to make the decision.  Count III alleges that the Secretary's determination that a waiver was not warranted under § 501(b) was arbitrary and capricious.  Defendants argue that the Secretary's decision is an action committed solely to agency discretion by law because it involves a purely discretionary decision about national defense and statutory enforcement and thus is unreviewable pursuant to § 701(a)(2) of the APA.[12]  In response, Furie argues that the statute does not implicate national defense in a manner that requires the court to abstain from review and that it is not challenging the decision itself; rather, it is challenging the Secretary's failure to exercise her independent judgment on the issue of national security.

Under the APA any person "adversely affected or aggrieved" by final agency action can obtain judicial review of that action.[13]  There is a general presumption of judicial review under the APA.[14]  However, APA review is not available if a particular statute "preclude[s] judicial review" or if "agency action is committed to agency

---

[10]*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[11]*Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[12]5 U.S.C. §701(a).

[13]5 U.S.C. § 702.

[14]*Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 718 (2011).

-6-

discretion by law."[15] Agency action is deemed committed to agency discretion by law "in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply."[16] Here, Defendants argue that the waiver determination at issue is one of those rare instances where the action is committed exclusively to the Secretary by law. Indeed, the statute clearly gives the Secretary discretion. It states that she "may" grant a waiver if she "considers it necessary in the interest of national defense" after the Maritime Administrator determines that a qualified U.S. vessel is not available.[17] However, "the mere fact that a statute contains discretionary language does not make agency action unreviewable."[18] Rather, the court looks at the language of the statute, regulations, agency policies, or judicial decisions to see whether there is a "meaningful standard" against which the court can review the agency's exercise of discretion.[19] It also looks at whether the general purpose of the statute would be endangered by judicial review.[20]

After considering the language of the statute, the court concludes that the decision to grant a Jones Act waiver under § 501(b) is one that is committed to the Secretary's discretion by law. Not only does the language of the statute clearly make the decision discretionary, but that discretion is required to be based on a determination of whether the waiver is necessary in the interest of national defense—an area of

---

[15] 5 U.S.C. § 701(a).

[16] *Webster v. Doe*, 486 U.S. 592, 599 (1988) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971)) (internal quotations omitted).

[17] 46 U.S.C § 501(b).

[18] *Pinnacle*, 648 F.3d at 719 (quoting *Beno v. Shalala*, 30 F.3d 1057, 1066 (9th Cir. 1994)) (internal quotations omitted).

[19] *Id.*

[20] *Id.*

executive action "in which courts have long been hesitant to intrude"[21] because they generally do not have the requisite standards nor the necessary expertise to aid in review. [22] Indeed, Furie fails to identify any statutory provisions, regulations, policies, or judicial decisions that would provide standards by which the court could review the Secretary's waiver decision.

Furie argues that in the context of the Jones Act, the term "national defense" is concerned with protecting the U.S. ship building and energy industries, and thus the Secretary's § 501(b) waiver decision is actually "more economic than military."[23] Furie asks the court to consider *Clifford v. Pena*,[24] where the court found the Maritime Administrator's decision to grant a waiver of requirements related to a subsidy aimed at stimulating American ship building reviewable. Furie argues that the case is an example of how issues involving the adequacy of the American merchant marine fleet is more a matter of economics than national defense. *Clifford* is not persuasive here. *Clifford* involved a different waiver provision under the Jones Act that was not tied to national defense or security, and there were specific agency guidelines governing the decision which supported reviewability.[25] Furie also cites examples where waivers to use foreign vessels have been allowed under § 501(b) based on reasons not squarely related to national defense but rather on issues relating to the oil industry. However, as noted by Defendants, those examples merely demonstrate that secretaries in the past have granted waivers presumably, given the language of the statute, for reasons they

---

[21]*Lincoln v. Vigil*, 508 U.S. 182, 192 (1993) (internal quotations omitted).

[22]*Pinnacle*, 648 F.3d at 720; *see also Webster v. Doe,* 486 U.S. 592 (1988) (denying a challenge to the CIA director's decision to dismiss an employee in the interest of national security after finding it unreviewable under the APA).

[23]Doc. 118 at p. 21.

[24]77 F.3d 1414 (D.C. Cir. 1996).

[25]*Id.* at 1417.

considered sufficiently related to national defense. Furie fails to cite an example where a waiver decision under § 501(b) has been reviewed by a court.

The clear and unambiguous language of the statute implicates national defense, and there are no standards provided as guidance, nor are there any internal regulations or policies that would provide some basis for the court's review. The fact that economic considerations may play into the Secretary's decision does not necessarily make the waiver decision reviewable under the APA. As noted by Defendants, such a decision reasonably involves a "balance of military, economic, social, technological, political, foreign and domestic policy considerations . . . [and] there are simply no meaningful standards against which to judge how the Executive should balance these various competing factors."[26]

Furie argues that it is not asking the court to review the waiver decision itself, but rather is asking the court to review the process used in reaching that decision, which it argues is reviewable under the APA. Indeed, the fact that an action is committed to agency discretion by law does not resolve the reviewability question because, even in such a situation, the court may review the decision-making process for an abuse of discretion "when the alleged abuse of discretion involves violation by the agency of constitutional, statutory, regulatory or other legal mandates or restrictions."[27] In other words, the court does not have jurisdiction to review agency action for abuse of discretion when the alleged abuse "consists only of the making of an informed judgment by the agency," but it does have jurisdiction to review agency action for abuse of discretion if it is alleged to have been taken by the agency in excess of its powers.[28]

As to Count II of the complaint, Furie argues that the Secretary improperly delegated her discretionary power to the Department of Defense and Department of

---

[26]Doc. 122 at pp. 5-6.

[27]*Ness Inv. Corp. v. U.S. Dep't of Agric.*, *Forest Serv.*, 512 F.2d 706, 715 (9th Cir. 1975).

[28]*Id.*

Education and thus failed to exercise her own independent discretion as mandated by the statute itself. It relies on *United States ex rel. Accardi v. Shaughnessy*[29] in support. The Court in *Accardi* examined whether the petitioner was entitled to a hearing as to whether the Attorney General had influenced the petitioner's deportation proceedings before the Board of Immigration Appeals by distributing to the board a list of people he wanted deported, which included the petitioner, and thereby removed discretion from the board in contravention of agency regulation. The Court emphasized that it was not "reviewing and reversing the manner in which discretion was exercised."[30] Rather, the petitioner raised a reviewable claim because he had challenged the BIA's "alleged failure to exercise its own discretion, contrary to existing valid regulations."[31] The court concluded that "as long as the regulations remain operative, the Attorney General denies himself the right to sidestep the [board] or dictate its decision in any manner" and that the board acts contrary to the agency's procedural rules when it fails to exercise its independent discretion.[32] *Accardi* is cited for the proposition that federal agencies are required to comply with their rules where the rules were "intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion ... [or where] an agency required by rule to exercise independent discretion has failed to do so."[33]

The court is not persuaded that *Accardi* governs the situation here. While the complaint alleges that the Secretary relied on the Department of Defense and the Department of Energy to determine whether the waiver would be proper in the interest of national defense, there is no allegation that these agencies attempted to side-step

---

[29]347 U.S. 260 (1954).

[30]*Id.* at 268.

[31]*Id.*

[32]*Id.* at 267.

[33]*Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538 (1970).

-10-

internal procedural regulations or otherwise attempted to exert improper influence. That is, even if the Secretary based her decision on the opinion of the two other agencies, the court cannot say that, like the Board of Immigration Appeals in *Accardi*, the Secretary failed to exercise her own discretion as required by internal agency rules. Moreover, as noted by Defendants, who the Secretary consulted, what factors she considered, and how much weight she assigned to any given fact or opinion "are the very considerations and contemplative aspects of the Secretary's decision making process which the courts have zealously avoided trying to second-guess."[34]

As to Count III, Furie alleges that Secretary Napolitano's decision to deny the waiver in May 2006 was arbitrary given that Secretary Chertoff had granted a waiver only five year's prior, and the material facts surrounding Furie's request had not changed. The claim does not allege that the Secretary acted illegally by failing to comply with some restriction on her decision-making process. Rather, the claim questions the decision itself. Review by the court would necessarily involve evaluating the Secretary's judgment regarding national defense based on the evidence supporting or undermining Furie's waiver request. As noted above, such decisions are not reviewable.

**B.     Count IV**

Count IV of Furie's complaint relates to the $15 million penalty assessed against it. Furie does not challenge CBP's calculation of the penalty, nor does it dispute CBP's power to levy a penalty under the Jones Act or enforce penalties to the extent they are lawful. Furie also emphasizes that Count IV does not "seek a review of an unreviewable mitigation decision." Rather, Furie challenges the "Defendants' conduct throughout the pre-assessment, assessment, and mitigation phases of the administrative proceeding."[35] Count IV asserts that during the pre-assessment

---

[34]Doc. 122 at p. 6.

[35]Doc. 118 at p. 28.

discussions the Secretary and CBP made promises and indicated that there were factors in favor of mitigation, but later failed to honor their promises and assessed a full penalty without mitigation. It argues that this conduct was arbitrary and capricious and thus unlawful under the APA. Defendants argue that the CBP considered Furie's requests for penalty mitigation pursuant to its authority under 19 U.S.C. § 1618 and that such decisions are committed to the discretion of the Commissioner of CBP and are not reviewable under the APA.

Section 1618, the basis for the CBP's authority to mitigate the Jones Act penalty, is discretionary in its language. It states that the Commissioner of the CBP may mitigate a penalty "upon such terms and conditions as he deems reasonable and just" if he "finds that such . . . penalty . . . was incurred without willful negligence or without an intention on the part of the petitioner to defraud the revenue or to violate the law, or finds the existence of such mitigating circumstances as to justify the remission or mitigation."[36] The parties agree that there is "long-standing precedent finding mitigation of penalty, forfeiture, and remission decisions exempt from judicial review."[37] Indeed, other courts have specifically held that penalty mitigation decisions under § 1618 are committed to agency discretion and unreviewable,[38] and that the APA did not change that fact.[39] Thus, the court cannot review the decision to deny the mitigation request pursuant to the APA.

Furie again argues that it is not asking the court to review the validity of the mitigation decision itself. Rather, it is asking the court to review the Defendants' conduct and statements surrounding their penalty assessment and mitigation denial. It

---

[36] 19 U.S.C. § 1618.

[37] Doc. 118 at p. 28.

[38] *United States v. One 1970 Buick Riviera*, 463 F.2d 1168, 1170 (5th Cir. 1972); *Gen. Finance Co. of La. v. United States*, 45 F.2d 380 (5th Cir. 1930); *Assocs. Inv. Co. v. United States,* 220 F.2d 885, 888 (5th Cir. 1955).

[39] *United States v. One 1961 Cadillac,* 337 F.2d 730, 732-33 (6th Cir. 1964).

-12-

alleges that Defendants' misleading statements and actions during the decision-making process were arbitrary and unreasonable.  As noted above, when an action is committed to agency discretion by law, as the decision to mitigate is here, the court may nonetheless review the decision-making process for an abuse of discretion "when the alleged abuse of discretion involves violation by the agency of constitutional, statutory, regulatory or other legal mandates or restrictions."[40]  Count IV, however, does not allege that Furie violated "constitutional, statutory, regulatory or other legal mandates or restrictions" as related to the mitigation decision.  That is, it does not allege that the CBP acted illegally by not following some mandated procedure or by exceeding some procedural limitation set forth in a statute, rule, or policy.  Rather, Count IV alleges that Defendants misled Furie and acted arbitrarily when it denied its mitigation petition after telling Furie that there were factors favoring mitigation.  Furie does not explain why Defendants' allegedly misleading statements provide the court with the power to review an otherwise unreviewable penalty mitigation decision.  Again, there is no mandated or standard mitigation procedure that CBP is alleged to have ignored or otherwise violated.

    In Count VI of its complaint, Furie has alleged that Defendants' misleading conduct also constitutes a violation of due process.  That claim is not the subject of the motion to dismiss here.  Defendants concede that "[d]espite the fact that there is no jurisdiction to review Furie's APA claims regarding the penalty and mitigation . . . Furie's constitutional claims based on essentially the same allegations remain for review."[41]

---

[40]*Ness*, 512 F.2d at 715.

[41]Doc. 122 at p. 10. *See Webster*, 486 U.S. at 603-04 (dismissing plaintiff's APA claims as unreviewable under the APA but finding that his constitutional claims based on the same facts were still judicially reviewable).

-13-

**IV. CONCLUSION**

Based on the preceding discussion, Defendants' motion at docket 116 is GRANTED, and Counts II, III, and IV are hereby dismissed.

DATED this 6th day of July 2015.

/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE